IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON L. BROWN,<br><br>   *Plaintiff,*<br><br> v.<br><br>PORT AUTHORITY TRANSIT<br><br>CORPORATION,<br><br>   *Defendant.* | CIVIL ACTION<br>NO. 25-3008 |

**Pappert, J.**                                  **December 12, 2025**

<u>**MEMORANDUM**</u>

  *Pro se* plaintiff Jason Brown again sues his employer, the Port Authority Transit Corporation, under Title VII of the Civil Rights Act of 1964 alleging retaliation and hostile work environment. PATCO moves to dismiss the amended complaint and the Court grants the motion because Brown fails again to allege facts which could state such claims.

I

A

  The Court dismissed Brown's original complaint on September 11, 2025, giving him until October 11 to amend his pleading. *See Brown v. Port Auth. Transit Corp.*, No. 25-3008, 2025 WL 2627689 (E.D. Pa. Sept. 11, 2025); (Sept. 11, 2025 Order at 1, Dkt. No. 16.) On October 10, Brown filed a "motion for summary judgment" in which he attempted to clarify his original complaint. *See* (Pl.'s Mot. for Summ. J. at 1–12, Dkt. No. 17). A few weeks later, the Court ordered PATCO to treat Brown's motion as an amended complaint and file a response. (Oct. 27, 2025 Order at 1–2, Dkt. No. 19.)

1

PATCO moved to dismiss Brown's claims with prejudice, *see* (Def.'s Mot. to Dismiss at 1, Dkt. No. 20), and Brown filed a response, labelling it a "second motion for summary judgment," *see* (Pl.'s Second Mot. for Summ. J. at 1–14, Dkt. No. 21).

As a general rule, if "a plaintiff amends [his] complaint, the new pleading supersedes the old one: The original pleading no longer performs any function in the case." *Royal Canin U.S.A., Inc. v. Wullschleger*, 145 S. Ct. 41, 52 (2025) (citation omitted). But this rule does not apply if the "amended complaint specifically refers to or adopts the earlier pleading." *West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013) (citation omitted). Here, given that Brown attempts to clarify his original pleading, he "filed [his] amended complaint with the intention of supplementing [his] original complaint, not superseding it." *Phillip v. Atlantic City Med. Ctr.*, 861 F. Supp. 2d 459, 462 n. 9 (D.N.J. 2012). The Court will therefore "construe[] both the original complaint and the amended complaint and consider[] these documents together in ruling on the pending motion[]." *Id.*

B

Brown began working for PATCO as a custodian in 2019 and became the senior custodian on the night shift in October of 2024. (Pl.'s Mot. for Summ. J. ¶¶ 1–3.) Around that time, the "custodial department faced overtime problems." (*Id.* ¶ 4.) Brown's allegations about those problems remain unclear, but their gravamen appears to be that PATCO did not permit night shift custodians to work as many overtime hours as morning shift custodians. *Brown*, 2025 WL 2627689, at *1. In November of 2024, Brown emailed John Rink, his PATCO general manager, expressing "concern about overtime and how it was being distributed [among] the custodians." (Original

Compl. ¶ 2, Dkt. No. 1); *see also* (Pl.'s Mot. for Summ. J. at Page 8) (alleging he "made an informal complaint and or inquiry about overtime access to his general manager"); (Pl.'s Second Mot. for Summ. J. at 4–5) (alleging he "brought to the attention of management" that "one crew [*i.e.*, morning shift custodians] ha[d] . . . more access to overtime [than another crew, *i.e.*, night shift custodians]"). Sometime after Brown emailed Rink, a PATCO director further reduced overtime opportunities for night shift custodians. (Pl.'s Mot. for Summ. J. ¶ 15.) Brown alleges "only one custodian on night shift could . . . access . . . overtime weekly . . . while the morning shift custodians [still] had plentiful opportunities to engage in overtime." (*Id.* ¶ 8); (Original Compl. ¶ 14.) In sum, after Brown "made an informal complaint and or inquiry about overtime access," a PATCO director created an overtime policy that "included [even] less access to overtime" for night shift custodians. (Pl.'s Mot. for Summ. J. at Page 8.)

## II

### A

Brown suggests PATCO retaliated against him. *See, e.g.*, (PATCO's Mem. of L. in Supp. of Mot. to Dismiss at 14, Dkt. No. 20) (explaining Brown does not assert a "standalone retaliation claim" in his amended complaint but "obliquely" refers to such a claim). Title VII prohibits an employer from retaliating against an employee because that employee "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding. 42 U.S.C. § 2000e-3(a). To state a claim for retaliation, Brown must show (1) he engaged in protected activity, (2) he later suffered an adverse employment action and (3) there was a causal link between

the protected activity and the employer's action. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).

1

Brown first suggests a PATCO director reduced overtime opportunities for night shift custodians because he "brought to the attention of management" that "one crew" (morning shift custodians) "ha[d] . . . more access to overtime" than his crew (night shift custodians). (Pl.'s Second Mot. for Summ. J. at 4–5); *see also* (Pl.'s Mot. for Summ. J. at 8.) But for the reasons the Court previously explained, Brown fails to allege sufficient facts to support two elements of a retaliation claim: protected activity and causation.

First, an employee engages in protected activity if he "oppose[s]" an employment practice Title VII forbids. 42 U.S.C. § 2000e-3(a); *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006). Title VII "prohibits employers from discriminating on the basis of race, color, religion, sex, or national origin." *Slagle v. County of Clarion*, 435 F.3d 262, 265 (3d Cir. 2006). An informal complaint may qualify as protected activity if it "protest[s]" a "discriminatory practice" made unlawful by Title VII. *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996). To determine whether a plaintiff complained about a discriminatory practice under Title VII, the Court must focus on the "message" he conveyed to his employer. *Moore*, 461 F.3d at 343 (citation omitted).

Brown says he engaged in protected activity when he "brought to the attention of management" that "one crew" (morning shift custodians) "ha[d] . . . more access to overtime" than another crew (night shift custodians). (Pl.'s Second Mot. for Summ. J. at 4–5.) Yet Brown did not oppose, or protest, something that Title VII proscribes—

4

discrimination based on race, color, religion, sex or national origin. 42 U.S.C. § 2000e-2(a)(1). Brown complained that night shift custodians were being treated unfairly because PATCO permitted morning shift custodians to work overtime more than night shift custodians. This is a "[g]eneral complaint[] of unfair treatment" unconnected to race, color, religion, sex or national origin. *Davis v. City of Newark*, 417 F. App'x 201, 203 (3d Cir. 2011) (per curiam). And a "general complaint of unfair treatment does not translate into a charge of illegal" race, color, religion, sex, or national origin treatment. *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995).

Second, even if Brown engaged in protected activity and later suffered an adverse employment action in the form of overtime reduction, he fails to show a causal link between the protected activity and the employer's action. To establish causation, Brown must show one of four things: (1) a "temporal proximity" between the protected activity and adverse action that is "unusually suggestive of retaliatory motive," (2) a "pattern of antagonism" towards him after he sent his email, (3) inconsistencies in the employer's explanations for the adverse action, or (4) other facts from which the Court could infer causation. *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 260 (3d Cir. 2017) (citations omitted); *Connelly*, 809 F.3d at 789, 793; *Petril v. Cheyney Univ. of P.A.*, 789 F. Supp. 2d 574, 581–82 (E.D. Pa. 2011).

Brown again fails to plead sufficient facts to support any theory of causation. He does not allege the specific temporal proximity between his complaint and the decision by the PATCO director to reduce overtime for night shift custodians. He does not plead facts showing that PATCO engaged in a pattern of antagonism after his email and before the overtime reduction decision. He shows no inconsistent explanations by

5

PATCO for the decision to reduce overtime for night shift custodians. And he pleads no other allegations from which the Court could infer causation.

2

Under Brown's second retaliation theory, a PATCO director reduced overtime opportunities for night shift custodians because he had previously sued that director for "racial discrimination." (Pl.'s Mot. for Summ. J. ¶ 16.) But again, Brown fails to allege sufficient facts to support a causal link between his lawsuit and the overtime reduction decision.

Even if Brown previously engaged in protected conduct by suing a PATCO employee for discriminatory conduct and later suffered an adverse employment action in the form of overtime reduction, he fails to demonstrate a link between the lawsuit and the overtime reduction decision. He states no specific details, including the "nature," of his previous lawsuit. (PATCO's Mem. of L. in Supp. of Mot. to Dismiss at 18.) He does not allege the temporal proximity between the lawsuit and the decision to reduce overtime for night shift custodians. He fails to allege facts showing that PATCO (or any of its employees) engaged in a pattern of antagonism after he filed his lawsuit. And he pleads no other facts from which the Court could infer that he lost overtime opportunities because of his lawsuit.

B

Brown next alleges PATCO subjected him to a hostile work environment because after he complained to his general manager, (1) PATCO reduced his overtime opportunities and (2) morning shift custodians left trash for night shift custodians to clean. (Pl.'s Mot. for Summ. J. at 8–12.) Title VII prohibits "the creation of a hostile

6

work environment" on the basis of an employee's race. *Vance v. Ball State Univ.*, 570 U.S. 421, 427 (2013); *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005). To state a claim for hostile work environment, Brown must allege facts to show (1) he suffered intentional discrimination because of his race, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected him, (4) the discrimination would detrimentally affect a reasonable person in like circumstances and (5) the existence of *respondeat superior* liability. *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013).

Brown fails to state a plausible claim for at least two of the reasons the Court previously explained: He does not allege sufficient facts to support that he suffered intentional discrimination because of race that was severe or pervasive. *Brown*, 2025 WL 2627689, at *3–4. First, he fails to show intentional discrimination because of race. Aside from his own subjective belief, no allegations permit the inference that Brown suffered discriminatory harassment. He fails to allege any facts suggesting that PATCO reduced overtime opportunities for night shift custodians or that morning shift custodians left trash on the ground for him to clean because of his race.

Second, Brown fails to allege facts which could establish that the harassment was severe or pervasive. Title VII does not create a workplace "civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation omitted). To succeed, Brown must show that his "work environment was so pervaded by discrimination that the terms and conditions of employment were altered." *Vance*, 570 U.S. at 427. The indignities that Brown claims to have suffered fall short of that bar. He, again, offers two: PATCO reduced his overtime opportunities and morning shift custodians dirtied

7

up his work environment. These incidents do not reflect behavior that was physically threatening, severe or humiliating; they instead reflect "ordinary tribulations" in the workplace. *Faragher*, 524 U.S. at 788 (quotation marks and citation omitted).

## III

A court should grant a plaintiff leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). But a court need not do so when amendment would be "futile." *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 113 (3d Cir. 2018). Amendment is futile if it would not "cure the deficiency" in the complaint or would not "withstand" another motion to dismiss. *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988). Because the Court gave Brown a chance to fix the problems with his claims, and because he all but ignored the Court's prior opinion, amendment would be futile. *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (explaining that amendment by a *pro se* plaintiff would be futile when he "already had two chances to tell his story"); *see also Caiby v. Link*, No. 22-cv-1403, 2023 WL 2539011, at *2 (E.D. Pa. Mar. 16, 2023) (dismissing a *pro se* plaintiff's amended complaint with prejudice because the Court gave him "a chance to amend his original complaint, and he has still not stated a claim").

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.